**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@kr.law
Jeffrey M. Rosenfeld (Bar No. 222187)
jeff@kr.law
James D. Carlson (admitted *pro hac vice*)
jim@kr.law
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Plaintiff Iranian Americans for Liberty Institute

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| **IRANIAN AMERICANS FOR LIBERTY INSTITUTE,** a Delaware exempt corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ALI EBRAHIMZADEH,** an individual, and **JOHN DOES 1-10**, unknown persons;<br><br>Defendants. | Case No. 2:22-cv-09240-MWF-MAR<br><br>**PLAINTIFF IRANIAN AMERICANS FOR LIBERTY INSTITUTE'S NOTICE OF MOTION AND MOTION PURSUANT TO RULE 56(d) TO PERMIT DISCOVERY AND DENY OR DEFER CONSIDERATION OF DEFENDANT ALI EBRAHIMZADEH'S SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Michael W. Fitzgerald<br>Ctrm: 5A<br>Date: March 6, 2023<br>Time: 10:00 a.m. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 6, 2023[1] at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 5A in the above-captioned Court, located at 350 W 1st Street, Los Angeles, CA 90012-4565, Plaintiff Iranian Americans for Liberty Institute will and hereby does move pursuant to Federal Rule of Civil Procedure ("Rule") 56(d) for an order denying or deferring consideration of Defendant Ali Ebrahimzadeh's Special Motion to Strike ("anti-SLAPP Motion") [D.E. No. 17.] and permitting discovery as outlined herein.

The Court should deny or defer consideration of Ebrahimzadeh's anti-SLAPP Motion under Rule 56(d) because: a) Plaintiff has set forth by declaration the facts it hopes to elicit from the discovery, b) the facts sought exist, and c) the sought-after facts are essential for Plaintiff to oppose Ebrahimzadeh's anti-SLAPP Motion.

This motion is based on this Notice of Motion and Motion; Plaintiff's Opposition to Defendant's Special Motion to Strike and all supporting exhibits and declarations; the pleadings and papers on file in this action; any reply memorandum that may be filed; and any further evidence or argument that may be presented to the Court at or prior to the submission of this motion and submission of Defendant's anti-SLAPP Motion.

The motion is made as part of Plaintiff's Opposition to Defendant's pending Special Motion to Strike, and following a conference of counsel pursuant to L.R. 7-

---

[1] Plaintiff is noticing the hearing for March 6, 2023, the date of the hearing on Defendant's anti-SLAPP motion. Plaintiff realizes that this hearing date, combined with today's date as the notice of the motion, does not strictly comply with Local Rule 6-1's Notice and Service of Motion requirements, as it does not allow twenty-eight (28) days between the notice and service of the instant Motion and the Motion Day designated in the Notice. However, the instant Motion would effectively be rendered moot if Defendant's anti-SLAPP motion is heard before a determination on the instant Motion, which requests that the Court deny or defer ruling on Defendant's anti-SLAPP Motion until discovery is conducted, which must be allowed as described herein. In addition, the Court may order a shorter time between the Notice and Service of Motion and the Motion Day. *See* L.R. 6-1.

1 | 3, which took place on January 17, 2023, and which counsel continued on February
2 | 9, 2023.

Respectfully Submitted,

DATED: February 13, 2023      **KRONENBERGER ROSENFELD, LLP**

By:     /s/ Jeffrey M. Rosenfeld
           Jeffrey M. Rosenfeld

Attorneys for Plaintiff

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1
INTRODUCTION ................................................................................................ 1
BACKGROUND .................................................................................................. 2
1.   Discovery Re: Defendant's Actual Malice ................................................. 2
2.   Discovery Re: Authentication and Authorship of Tweets .......................... 3
3.   Discovery Re: Damages ............................................................................ 3
ARGUMENT ....................................................................................................... 4
A.   Legal Standard ......................................................................................... 4
B.   Plaintiff's Proposed Discovery ................................................................. 7
    1.   Ebrahimzadeh's Actual Malice ............................................................ 7
    2.   Authentication and Authorship of the Tweets ................................... 10
    3.   Plaintiff's Damages ........................................................................... 10
C.   Additional Discovery ............................................................................. 12
CONCLUSION .................................................................................................. 12

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# TABLE OF AUTHORITIES

Page(s)

Cases

*B & L Prods., Inc. v. 22nd Dist. Agric. Ass'n*,
 394 F. Supp. 3d 1226 (S.D. Cal. 2019)...................................................................5

*Balla v. Hall*,
 59 Cal. App. 5th 652 (2021) ..................................................................................10

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck*,
 323 F.3d 767 (9th Cir. 2003) ...............................................................................6, 7

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)................................................................................................5

*Christian Rsch. Inst. v. Alnor*,
 148 Cal. App. 4th 71 (2007) ..............................................................................9, 10

*Exch. Comm'n v. Stein*,
 906 F.3d 823 (9th Cir. 2018) ..................................................................................5

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
 525 F.3d 822 (9th Cir. 2008) ..................................................................................5

*Freeman v. ABC Legal Servs. Inc.*,
 827 F. Supp. 2d 1065 (N.D. Cal. 2011) ..................................................................6

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
 525 F. Supp. 3d 1145 (S.D. Cal. 2021).................................................................10

*John Doe 2 v. Superior Ct.*,
 1 Cal. App. 5th 1300 (2016) .................................................................................10

*McGarry v. Univ. of San Diego*,
 154 Cal. App. 4th 97 (2007) ................................................................................7, 8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
 890 F.3d 828 (9th Cir.) ..................................................................................1, 4, 5

*Sparrow LLC v. Lora*,
  No. CV-14-1188-MWF (JCX), 2014 WL 12573525 (C.D. Cal. Dec. 4, 2014) .... 1

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ................................................................. 5, 6

*Tarutis v. Wal-Mart Stores, Inc.*,
  2013 WL 247710 (W.D. Wash. Jan. 23, 2013) ........................................... 6

*Zazzali v. Swenson*,
  No. 1:12-CV-224-S-MJP, 2013 WL 6200189 (D. Idaho Nov. 27, 2013) ............. 6

Statutes

California Code of Civil Procedure ("CCP") §425.16 ................................................ 1

Rules

Federal Rule of Civil Procedure 56 ........................................................... 1, 4, 5, 6

Other Authorities

L.R. 6 ............................................................................................................. 1
L.R. 7 ............................................................................................................. 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Ali Ebrahimzadeh has filed a Special Motion to Strike Plaintiff's Complaint pursuant to California Code of Civil Procedure ("CCP") §425.16 ("anti-SLAPP Motion") [D.E. No. 17.] In his anti-SLAPP Motion, Ebrahimzadeh argues that Plaintiff's Complaint is both legally and factually deficient. Plaintiff has filed an Opposition to Ebrahimzadeh's anti-SLAPP Motion contemporaneously with this motion. As set forth in its Opposition,[2] the Court should deny Ebrahimzadeh's anti-SLAPP to the extent it raises legal challenges.

As to the anti-SLAPP Motion's factual challenges, Federal Rule of Civil Procedure ("Rule") 56 applies and "discovery must be allowed." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018) (*hereinafter,* "*Planned Parenthood*").

Plaintiff seeks to conduct discovery relevant to Ebrahimzadeh's factual challenges pursuant to Rule 56(d). Specifically, Plaintiff proposes conducting discovery as to:

- Ebrahimzadeh's actual malice;
- Ebrahimzadeh's authorship of the tweets at issue and the authenticity of Plaintiff's screenshots of the tweets; and
- Plaintiff's damages.

The Court should allow Plaintiff's proposed discovery because: a) Plaintiff has set forth by declaration the facts it hopes to elicit from its proposed discovery, b) the facts sought exist, and c) the sought-after facts are essential for Plaintiff to oppose Ebrahimzadeh's anti-SLAPP Motion.

---

[2] This motion is noticed and brought separately from Plaintiff's Opposition to Defendant's Special Motion, as required by CCP §425.16. *See Sparrow LLC v. Lora*, No. CV-14-1188-MWF (JCX), 2014 WL 12573525, at *6 (C.D. Cal. Dec. 4, 2014) (clarifying that request for discovery must be brought separately from opposition to anti-SLAPP motion).

# BACKGROUND

On December 20, 2022, Plaintiff filed its Complaint against Ebrahimzadeh, asserting a single cause of action for defamation based on his publication of two tweets (the "Tweets"). [D.E. No. 1.] On February 2, 2023, Ebrahimzadeh filed his anti-SLAPP Motion. [D.E. No. 17.] In his anti-SLAPP Motion, Defendant challenges both the legal sufficiency and factual sufficiency of Plaintiff's defamation claim.

Plaintiff seeks to conduct the following discovery regarding the factual issues raised in Defendant's anti-SLAPP Motion:

**1. Discovery Re: Defendant's Actual Malice**

    a. Plaintiff intends to serve requests for production of documents ("RFPs"), interrogatories ("ROGs"), requests for admission ("RFAs"), and to take Defendant's deposition regarding the following topics:

        i. All factual bases for Defendant's Tweets at issue in the Complaint;

        ii. All records that Defendant relied on in publishing the Tweets;

        iii. All non-documentary information that Defendant relied on in publishing the Tweets;

        iv. All persons with whom Defendant discussed the bases for the Tweets prior to publishing the Tweets;

        v. All records in Defendant's possession, custody, or control that refer to Plaintiff;

        vi. All communications between Defendant and Masih Alinejad;

    b. Plaintiff intends to serve a document subpoena on Masih Alinejad, and possibly take Ms. Alinejad's deposition, regarding:

      i.    All communications between Ms. Alinejad and Defendant;

      ii.    All communications between Ms. Alinejad and Defendant's affiliated organization, Normal Life Council;

**2. Discovery Re: Authentication and Authorship of Tweets**

    a.    Plaintiff intends to serve RFPs, ROGs, RFAs, and to take Defendant's deposition regarding the following topics:

      i.    The authenticity of Plaintiff's screenshots of the Tweets;

      ii.    Defendant's authorship of the Tweets;

      iii.    Defendant's exclusive or non-exclusive use of his prior and current Twitter accounts;

    b.    If Defendant denies authorship or authenticity of the Tweets, Plaintiff intends to serve a document subpoena on Twitter seeking:

      i.    Records regarding the authorship of the Tweets;

      ii.    The ownership of the Prior Twitter Account (as defined in the Complaint);

**3. Discovery Re: Damages**

    a.    Plaintiff intends to serve RFPs, ROGs, RFAs, and to take Defendant's deposition regarding the following topics:

      i.    All comments and communications Defendant had regarding the Tweets;

      ii.    Other statements that Defendant made about Plaintiff following the publication of the Tweets;

    b.    Plaintiff intends to serve a document subpoena on Twitter seeking:

      i.    Records reflecting the views, comments, and likes of the Tweets;

    c.    Plaintiff intends to serve document subpoenas on the operators of

conferences about U.S. policy toward Iran and related issues that did not invite Plaintiff to present following the publication of the Tweets; Plaintiff will seek:

    i. All documents that refer to any decision to invite or not to invite Plaintiff to the conference following the publication of the Tweets;

d. Plaintiff intends to serve document subpoenas on the operators of Persian-language media that declined to publish Plaintiff's editorials and/or advertorials following the publication of the Tweets; Plaintiff will seek:

    i. All documents that refer to any decision to publish or not to publish any work by Plaintiff following the publication of the Tweets.

(the "Proposed Discovery"). (Declaration of James D. Carlson in Support of Plaintiff's Motion Pursuant to Rule 56(d) to Permit Discovery and Deny or Defer Consideration of Defendant's Special Motion to Strike ("Carlson Decl.") ¶6.)

## ARGUMENT

### A. Legal Standard

"When an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018) (*hereinafter*, "*Planned Parenthood*"). "[I]n such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *See Planned Parenthood*, 890 F.3d at 834. *Planned Parenthood* clarified that discovery must be permitted because requiring a presentation of evidence without permitting such discovery would circumvent the procedural safeguards firmly established in the federal rules. *See id*. at 833–34. In this context, Rule 56(d) is the

procedural safeguard. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (commenting that Rule 56(f)(2) provides a means to address premature motions when the non-moving party has not had an opportunity to make full discovery).

Rule 56(d) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018). Under Rule 56(d), when a party opposing summary judgment shows by declaration that, "for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. Proc. 56(d).

A party moving for discovery under Rule 56(d) must outline the essential information that exists needed to oppose summary judgment, but the required showing is lower when no discovery has been conducted. A party requesting discovery under Rule 56(d) must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *See Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing former Rule 56(f)). Regarding the second requirement, it must be "'likely' that those facts will be discovered during further discovery." *B & L Prods., Inc. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226, 1241 (S.D. Cal. 2019) (quoting *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018)). "In other words, there must be a basis or factual support for the assertions that further discovery would lead to the facts and testimony described in an affidavit submitted pursuant to Rule 56(d)." *Id*. at 1241 (internal quotations and brackets omitted).

The required showing "cannot, of course, predict with accuracy precisely what further discovery *will* reveal; the whole point of discovery is to learn what a party does not know or, without further information, cannot prove." *Stevens*, 899

F.3d at 678 (emphasis in original). And where no discovery whatsoever has taken place, "the party making a Rule 56[d] motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 774 (9th Cir. 2003) (citing Rule 56(f)). Indeed, failure to offer a sufficient prima facie showing of facts may be justified when no discovery had been conducted, initial disclosures have not been exchanged, and a Rule 26(f) discovery planning conference has not occurred. *See, e.g.*, *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1077 (N.D. Cal. 2011).

Thus, when a party has not had a realistic opportunity to pursue discovery relating to its theory of the case, "district courts should grant any Rule 56[d] motion fairly freely." *Burlington N. Santa Fe R. Co.*, 323 F.3d at 773 (citing former Rule 56(f)). This is especially true where "documentation or witness testimony may exist that is dispositive of a pivotal question[,]" and a premature grant of a dispositive motion could "impede informed resolution of fact-specific disputes." *Id.* at 774.

The right to conduct discovery under Rule 56(d) includes the right to engage affirmative experts. *See, e.g.*, *Tarutis v. Wal-Mart Stores, Inc.*, No. C12-5076 RJB, 2013 WL 247710, at *3 (W.D. Wash. Jan. 23, 2013) (permitting additional discovery and time for retention of expert relating to adequacy accidental injury prevention procedures); *Zazzali v. Swenson*, No. 1:12-CV-224-S-MJP, 2013 WL 6200189, at *1 (D. Idaho Nov. 27, 2013) (granting Rule 56(d) request so that party could retain experts).

Rule 56(d) requests should be liberally granted unless a party has failed to exercise due diligence in conducting discovery, filed an untimely Rule 56(d) request, or failed to explain how additional facts would oppose summary judgment. *See Freeman*, 827 F. Supp. 2d at 1071.

//

### B. Plaintiff's Proposed Discovery

As set forth in the declaration of James D. Carlson submitted herewith, Plaintiff has not had sufficient opportunity to complete discovery on three issues: (1) Ebrahimzadeh's actual malice; (2) authentication and authorship of the Tweets; and (3) Plaintiff's damages. The Court should freely grant Plaintiff's request to pursue discovery about these issues because Plaintiff has had no opportunity to pursue discovery. *See Burlington N. Santa Fe R. Co.*, 323 F.3d at 773. Additionally, this request is timely made, and Plaintiff explains below how the Proposed Discovery will be used to oppose Defendant's anti-SLAPP Motion. *See id*.

#### 1. Ebrahimzadeh's Actual Malice.

Plaintiff concedes that it must show actual malice to prevail on its defamation claim. To establish actual malice, a plaintiff must show that the defendant made the defamatory statement either with knowledge that it was false or with reckless disregard of the falsity. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007). The test is a subjective test, under which the defendant's actual belief concerning the truthfulness of his statement is crucial. *See id.* With its Proposed Discovery, Plaintiff seeks two categories of information regarding Ebrahimzadeh's actual malice.

First, Plaintiff seeks to uncover Ebrahimzadeh's factual bases for the Tweets. (Carlson Decl. ¶6(a)(i).) The Proposed Discovery seeks records and non-documentary information that Ebrahimzadeh relied on in publishing the Tweets. (Carlson Decl. ¶6(a)(i)(2)–(3).) Such information will include the identity of anyone with whom Ebrahimzadeh discussed the bases for the Tweets before publishing them and Ebrahimzadeh's records that refer to Plaintiff. (Carlson Decl. ¶6(a)(i)(4)–(5).)

Such evidence necessarily exists. (Carlson Decl. ¶¶7, 10.) Specifically, Ebrahimzadeh had some reason and basis for publishing the Tweets. In fact, the context of the Tweets indicates that Ebrahimzadeh had specific reasons. Ebrahimzadeh is the CEO of a non-profit organization called the Normal Life

Council, which used Twitter in 2021 to raise awareness of human rights issues in Iran. (Ebrahimzadeh Decl. [D.E. No. 17-1] ¶3.) As the Tweets themselves demonstrate, Plaintiff was the subject of Ebrahimzadeh's communications with other activists. (Jafari Decl. ¶¶27–28 & Ex. C-D.) Moreover, Ebrahimzadeh admits that in December 2021—the timeframe of the Tweets—he was "actively monitoring traditional and social media about Iran's government and those who support and undermine the regime." (Ebrahimzadeh Decl. [D.E. 17-1] ¶7.) Thus, Ebrahimzadeh has made clear that he is familiar with Plaintiff, has accessed Plaintiff's website, and has read Plaintiff's statements. (Ebrahimzadeh Decl. [D.E. 17-1] ¶¶ 4–6, 9–11.) However, Plaintiff's website and Twitter profile contain several statements that flatly contradict Ebrahimzadeh's Tweets. (Jafari Decl. ¶¶9–10, 47–49 & Exs. A, G.) For example, Plaintiff called on Twitter to suspend Khamenei's Twitter account on May 7, 2021. (Jafari Decl. ¶10 & Ex. A.) Further, at the time of the Tweets, Plaintiff had several public statements on its website condemning the National Iranian American Council ("NIAC"). (Jafari Decl. ¶¶41–48 & Ex. G.) Thus, Ebrahimzadeh has information and records regarding his basis for publishing the Tweets.

This foregoing Proposed Discovery is essential to proving whether Ebrahimzadeh acted with actual malice because the malice inquiry is subjective. (Carlson Decl. ¶¶7, 11.) Thus, the Court and the jury must ask what Ebrahimzadeh believed when he published the Tweets, including whether he turned a blind eye to information that would have revealed the falsity of the Tweets. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007). If Ebrahimzadeh had read any of Plaintiff's public statements about NIAC or Khamenei, his belief in the truth of his Tweets would be substantially undermined.

Second, Plaintiff seeks discovery about communications between Masih Alinejad and Ebrahimzadeh. (Carlson Decl. ¶¶6(a)(ii), 7.) Alinejad is an activist and journalist. (Ebrahimzadeh Decl. [D.E. No. 17-1] ¶8.) Plaintiff has publicly disagreed with Alinejad about partisan political issues, such as the most effective approach to

opposing the Iranian regime from within the United States. (Jafari Decl. ¶16.) On December 22, 2021, Alinejad posted a tweet with an excerpt of a CNN interview of herself and Senator Chris Coons, during which she suggested that large social media companies should ban users based on political affiliation. (Jafari Decl. ¶¶17–18 & Ex. B.) Plaintiff then issued a statement about Alinejad's tweet on December 24, 2022. (Jafari Decl. ¶¶17, 20.) It was Plaintiff's December 24 statement about Alinejad that apparently prompted Ebrahimzadeh's Tweets, and the statement was visibly embedded within the Tweet itself. (Jafari Decl. ¶31 & Ex. C.)

Communications between Ebrahimzadeh and Alinejad likely exist. (Carlson Decl. ¶¶7, 10.) Ebrahimzadeh specifically identifies Alinejad in his declaration as someone he knows as "a famous Iranian Activist." (Ebrahimzadeh Decl. [D.E. No. 17-1] ¶¶8–9.) Ebrahimzadeh admits that he read Plaintiff's December 24, 2021 statement about Alinejad's comments. (Ebrahimzadeh Decl. [D.E. No. 17-1] ¶9.) Ebrahimzadeh then published his Tweets about Plaintiff's statement the next day. (Jafari Decl. at ¶31 & Ex. C.) Ebrahimzadeh published the Tweets just one day after Defendant issued its statement heavily criticizing Alinejad; and as noted above, Defendant and Alinejad have publicly disagreed on sensitive issues in the past. (Jafari Decl. ¶16.) Plaintiff believes that Ebrahimzadeh's Tweets were the result of either collusion between Ebrahimzadeh and Alinejad, or the result of Alinejad encouraging Ebrahimzadeh to post the Tweets. (Jafari Decl. ¶32.) Thus, communications between Ebrahimzadeh and Alinejad likely exist.

Communications between Alinejad (a public antagonist of Plaintiff) and Ebrahimzadeh are also essential to proving whether Ebrahimzadeh acted with actual malice. (Carlson Decl. ¶¶7, 11.) Circumstantial evidence, such as a failure to investigate, anger and hostility toward the plaintiff, and reliance upon sources known to be biased against the plaintiff may indicate that the defendant had serious doubts regarding the truth of his publication. *Christian Rsch. Inst. v. Alnor*, 148 Cal. App. 4th 71, 84–85 (2007). If evidence demonstrates that Alinejad played a role in

Ebrahimzadeh's Tweets, such evidence would be relevant to whether Ebrahimzadeh acted with an ulterior motive in publishing the false Tweets. *Id.*

### 2. Authentication and Authorship of the Tweets

To prevail on a defamation claim, the plaintiff must show that the defendant published the defamatory material. *See John Doe 2 v. Superior Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (setting forth elements of defamation claim). It is unclear whether Ebrahimzadeh denies whether he published the Tweets and/or whether Plaintiff's screenshots of the Tweets are accurate. Thus, Plaintiff seeks Proposed Discovery on these issues.

Plaintiff intends to serve Ebrahimzadeh with Proposed Discovery asking him to admit that he published the Tweets and that Plaintiff's screenshots of the Tweets are accurate copies of the Tweets. (Carlson Decl. ¶6(b)(i).) If Ebrahimzadeh denies publishing the Tweets, Plaintiff will seek that information from Twitter through a document subpoena. (Carlson Decl. ¶6(b)(ii).)

These facts exist, in that the Tweets were in fact published on Twitter. (Jafari Decl. ¶¶26–28.) Moreover, Twitter retains records of account ownership and use, including records of login events. (Carlson Decl. ¶10.) Such evidence is often used to establish authorship. (Carlson Decl. ¶10.)

Because showing that Ebrahimzadeh published the Tweets is an element of Plaintiff's defamation claim, the sought-after facts are essential for Plaintiff to oppose Ebrahimzadeh's anti-SLAPP Motion. (Carlson Decl. ¶11.)

### 3. Plaintiff's Damages

While Plaintiff does not need to establish special damages to prevail on its claim for defamation per se, it intends to seek both special and general damages from Ebrahimzadeh. *See* Civil Code §45a; *Balla v. Hall*, 59 Cal. App. 5th 652, 675–76 (2021). Under California law, while the fact of damages must be clearly shown, the amount need not be proved with the same degree of certainty. *See Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1245 (S.D. Cal. 2021).

Plaintiff intends to conduct Proposed Discovery about its damages resulting from the defamatory Tweets.

Plaintiff intends to conduct Proposed Discovery about four topics relevant to its damages. First, Plaintiff seeks records and information from both Ebrahimzadeh and Twitter regarding the views and reactions to the Tweets. (Carlson Decl. ¶¶8–9.) Such records would include specific communications that Defendant had with third parties about the Tweets and general viewer data for the Tweets maintained by Twitter. (Carlson Decl. ¶6(c)(i)–(ii).) Such documents and information exist because the screenshots of the Tweets show that the Tweets generated significant reaction and comments. (Jafari Decl. ¶34 & Ex C.) Moreover, Twitter maintains data regarding the views, likes, and comments to tweets. (Carlson Decl. ¶10.) This Proposed Discovery is essential to showing the reputational harm suffered by Plaintiff. (Carlson Decl. ¶11.)

Second, Plaintiff intends to conduct Proposed Discovery about the reason that certain conferences did not extend invitations to Plaintiff following the publication of the Tweets (*e.g.*, The Iran Conference, hosted by the National Union for Democracy in Iran (Jafari Decl. ¶68)). These conferences had invited Plaintiff and its members in the past, and Plaintiff was expecting invitations from these conferences before the publication of the Tweets. (Jafari Decl. ¶¶66, 73.) The conferences likely have internal records and communications regarding their decisions not to extend invitations to Plaintiff because the lack of invitations was irregular and unexpected. (Jafari Decl. ¶68 (former IAL member was invited but IAL was not); Carlson Decl. ¶10.) Because conference speakerships are important aspects of Plaintiff's mission and Plaintiff's fundraising, evidence that the Tweets caused conferences to boycott Plaintiff would be essential to showing Plaintiff's economic harm. (Carlson Decl. ¶11.)

Third, Plaintiff intends to conduct Proposed Discovery about the reason that certain Persian-language news outlets declined to publish Plaintiff's works (*e.g.*, the

MonatoTV network and its corresponding YouTube channel (Jafari Decl. ¶77.).) These publications had regularly accepted Plaintiff's works before the publication of the Tweets. (Jafari Decl. ¶77.) The publications likely have internal records and communications regarding their decisions not to publish Plaintiff's materials because such an occurrence was irregular and unexpected. (Jafari Decl. ¶¶77–82; Carlson Decl. ¶¶9–10.) Because Persian language media publications are important aspects of Plaintiff's mission and Plaintiff's fundraising, evidence that the Tweets caused publications to boycott Plaintiff would be essential to showing Plaintiff's economic harm.

Finally, Plaintiff intends to retain an expert to quantify its special damages resulting from the Tweets. Because the amount of special damages must be proved to some degree of certainty, this information is essential to Plaintiff's defamation claim. (Carlson Decl. ¶¶10–11.)

### C.    Additional Discovery

While Plaintiff has sought to outline the likely sources of relevant information in its Proposed Discovery, the Proposed Discovery may reveal new avenues of relevant inquiry. Thus, Plaintiff wishes to reserve the right to request that the Court authorize additional discovery under Rule 56(d). Plaintiff proposes that if it wishes to take additional discovery not outlined in the Proposed Discovery, the parties should first meet and confer about the scope of such additional discovery. If the parties cannot reach an agreement, Plaintiff proposes filing a motion with the assigned magistrate judge to allow such additional discovery.

### CONCLUSION

For the reasons set forth above, the Court should deny Ebrahimzadeh's special motion to strike. Alternatively, the Court should defer ruling on Ebrahimzadeh's special motion to strike until Plaintiff has had a full opportunity to conduct discovery.

//

Respectfully Submitted,

DATED: February 13, 2023                     **KRONENBERGER ROSENFELD, LLP**

By:      /s/ Jeffrey M. Rosenfeld
             Jeffrey M. Rosenfeld

Attorneys for Plaintiff Iranian Americans for Liberty Institute

The undersigned, counsel of record for Plaintiff Iranian Americans for Liberty Institute, certifies that this brief contains 3,856 words, which complies with the word limit of L.R. 11-6.1.

DATED: February 13, 2023                     **KRONENBERGER ROSENFELD, LLP**

By:      /s/ Jeffrey M Rosenfeld
             Jeffrey M. Rosenfeld

Attorneys for Plaintiff Iranian Americans for Liberty Institute